UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LORI HAMBY, as surviving
parent of MARY MADISON HAMBY
GARCIA, and as personal
representative of MARY
MADISON HAMBY GARCIA,

      Plaintiff,           CIVIL ACTION

      v.                   NO. 1:03-CV-0937-CAP

DAIMLERCHRYSLER CORPORATION,

      Defendant.

O R D E R

This matter is currently before the court on the plaintiff's
motion for a Rule 16(a) status conference [Doc. No. 59], motion
to compel discovery responses [Doc. No. 66], motion for oral
argument on the defendant's motion for partial summary judgment
[Doc. No. 86], and motion for oral argument on the motion to
compel [Doc. No. 90].  Also before the court are the defendant's
motion for partial summary judgment [Doc. No. 67], motion to
supplement motion for partial summary judgment [Doc. No. 72],
and motion for leave to file affidavit in response to the
plaintiff's motion to compel [Doc. No. 84].  The court will
first address the discovery issues raised by the plaintiff and

will then turn to the defendant's motion for partial summary judgment and the related motions.

**I.  Discovery Issues**

   **A.  Motion for Rule 16(a) Status Conference [Doc. No. 59]**

   The plaintiff, Lori Hamby, has filed a motion for a status conference pursuant to Federal Rule of Civil Procedure 16(a). Rule 16(a) states:

> Pretrial Conferences; Objectives. In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as
>
> (1)      expediting the disposition of the action;
> (2)      establishing early and continuing control so that the case will not be protracted because of lack of management;
> (3)      discouraging wasteful pretrial activities;
> (4)      improving the quality of the trial through more thorough preparation, and;
> (5)      facilitating the settlement of the case.

In this case, the court finds a pretrial conference is not necessary at this time. Though the discovery period has expired, it appears that the parties have been cooperating with regard to discovery (except for the limited issue raised by Hamby's motion to compel). Accordingly, Hamby's motion for a status conference is DENIED. The parties, however, are directed to jointly file a brief, not to be longer than ten pages,

informing the court of the status of discovery in this case, particularly whether the parties need an extension of the discovery period.  The parties are further ordered to file this brief within ten days of the entry of this order.

**B.  Motion to Compel Discovery Responses [Doc. No. 66], Motion for Oral Argument on the Motion to Compel [Doc. No. 90], and Motion for Leave to File Affidavit in Response to the Motion to Compel [Doc. No. 84]**

As an initial matter, the court holds oral argument is unnecessary in this instance, and, therefore, Hamby's motion for oral argument is DENIED.  Furthermore, the court GRANTS DaimlerChrysler Corporation's ("DaimlerChrysler") motion for leave to file an affidavit in response to the motion to compel. The court will consider all filings made by the parties in connection with the motion to compel.

In her motion, Hamby seeks to compel DaimlerChrysler to produce documents regarding the expert witnesses utilized by DaimlerChrysler in this case.  Specifically, Hamby has requested information regarding the amount DaimlerChrysler has paid over the last five years to certain experts who have testified or will testify in this case.  DaimlerChrysler objects to the requests at issue on the following grounds: (1) the scope of the information sought; (2) the requests are excessively burdensome;

3

and (3) the information sought is irrelevant and confidential.

DaimlerChrysler's arguments, however, are unavailing.

Federal Rule of Civil Procedure 26(b)(1) states:

Parties may obtain discovery regarding any matter, not
privileged, that is relevant to the claim or defense
of any party, including the existence, description,
nature, custody, condition, and location of any books,
documents, or other tangible things and the identity
and location of persons having knowledge of any
discoverable matter. For good cause, the court may
order discovery of any matter relevant to the subject
matter involved in the action. Relevant information
need not be admissible at the trial if the discovery
appears reasonably calculated to lead to the discovery
of admissible evidence.

Additionally, Federal Rule of Civil Procedure 26(c) states:

Upon motion by a party or by the person from whom
discovery is sought, accompanied by a certification
that the movant has in good faith conferred or
attempted to confer with other affected parties in an
effort to resolve the dispute without court action,
and for good cause shown, the court in which the
action is pending or alternatively, on matters
relating to a deposition, the court in the district
where the deposition is to be taken may make any order
which justice requires to protect a party or person
from annoyance, embarrassment, oppression, or undue
burden or expense, including one or more of the
following:

(1) that the disclosure or discovery not be had . . . .

DaimlerChrysler first argues that Hamby's requests seek "all
documents that state the total amount paid" by DaimlerChrysler
to each of its five named experts for a lengthy period of time

4

pre-dating this litigation.  DaimlerChrysler objects on the ground that the requests do not differentiate the amounts paid by DaimlerChrysler to its experts for actual expert witness work from amounts paid for consulting work or other activity unrelated to this litigation.  For this reason, DaimlerChrysler argues the information sought is irrelevant.  But DaimlerChrysler has not cited any Eleventh Circuit authority dictating that information sought regarding the relationship between a party and its expert witnesses must be limited to case-related work performed by the expert.  Instead, Hamby is entitled to fully examine the relationship between DaimlerChrysler and its expert witnesses, including work done by the experts for DaimlerChrysler in other matters.  Furthermore, the court holds the requests are tailored so as to cover a reasonable time period.

DaimlerChrysler next objects that the discovery requests are unduly burdensome because they cover five expert witnesses who may have participated in unrelated DaimlerChrysler lawsuits covering a wide variety of jurisdictions and geographic locations.  Further, DaimlerChrysler claims it does not maintain the type of information sought in a central, readily accessible location or form.  According to DaimlerChrysler, the only

5

information available does not permit a determination of the number of cases in which DaimlerChrysler has retained individual experts or the amount of money paid to these individual experts. Instead, the available information is organized solely by the vendor company name.

First, the fact that it might be difficult for DaimlerChrysler to obtain the information sought does not absolve DaimlerChrysler of the duty to produce those documents. Of course, DaimlerChrysler does not have to produce information it does not have.  But if the information responsive to Hamby's requests reflects only the amounts paid to vendors and not to individual experts, then DaimlerChrysler must produce this information, and Hamby can then decide how to further utilize this information.  Moreover, the court holds that information regarding the amounts paid by DaimlerChrysler to the vendors who employ the experts is relevant to this action, in that, Hamby has a right to probe the relationship between the experts' employers and DaimlerChrysler.

Finally, DaimlerChrysler argues the information sought is irrelevant.  DaimlerChrysler claims the information regarding payments to its experts would be offered by Hamby only to incite or inflame the jury.  Under Rule 26(a), however, "[r]elevant

6

information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." As stated above, Hamby has a right to examine the relationship between DaimlerChrysler and its expert witnesses, and, therefore, the discovery requests at issue are reasonably calculated to lead to the discovery of admissible evidence. For all of these reasons, the court GRANTS Hamby's motion to compel.

## II. Summary Judgment

### A. Supplement to the Motion for Partial Summary Judgment [Doc. No. 72]

Subsequent to the filing of its motion for summary judgment, DaimlerChrysler filed a supplement to its motion for summary judgment, but DaimlerChrysler did not file a motion for leave to file that supplement. Under Local Rule 56.1, "the parties shall not be permitted to file supplemental briefs and materials, with the exception of a reply by the movant, except upon order of the court." Nevertheless, the court will treat DaimlerChrysler's supplement as including a motion for leave to file. The court GRANTS DaimlerChrysler's motion for leave to file supplemental materials to the motion for summary judgment. The court will

consider all materials filed by the parties in connection with the motion for summary judgment.

**B.   Motion for Partial Summary Judgment [Doc. No. 67]**

**1.   Factual Background**

In analyzing a summary judgment motion, the court resolves all issues of fact in favor of the nonmovant. <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1486 (11th Cir. 1996). Accordingly, the court states the facts of this case in the light most favorable to Hamby.

Sometime in early 2002, Hamby purchased a 1991 Dodge Caravan from a private individual. She drove this van every day for several months prior to July 2002 without any problems with the vehicle. On July 27, 2002, Roberto Martinez, a friend of Hamby's, drove Hamby and her two-year old daughter, Mary Madison Hamby Garcia ("Madison"), from Hamby's aunt's house to Hamby's grandmother's house in Forsyth County, Georgia. Martinez parked the Caravan on a slightly sloping driveway facing the house. Neither Hamby nor Martinez recalls whether Martinez engaged the parking brake before getting out of the vehicle.

A short time after returning to the grandmother's house, Hamby and Martinez began performing a few outside chores. Hamby was hanging clothes on a clothesline located in the yard of the

house, and, a few feet away, Martinez was cleaning the Caravan. All of the doors were open to allow access for vacuuming the van's interior.  The keys were in the ignition, and the ignition was turned on so that Martinez could listen to the radio, but the engine was not running.

At some point, Madison climbed between the front seats and was playing with the radio controls.  Martinez turned and walked about ten feet away to get a bottle of cleaner when he heard the van moving.  He turned and saw the van begin to roll down the driveway with Madison inside.  The vehicle began to roll because Madison had moved the gear shift lever out of park and into either reverse or neutral.

Upon seeing the Caravan begin to roll, Martinez began to chase after the van.  He was able to catch up to the passenger door, but he was knocked down and dragged trough the gravel driveway until he could no longer hang on.  Hamby also gave chase, but she was not able to catch up to the vehicle.  The van, with Madison inside, rolled approximately 120 feet down the driveway, over a small tree, and into a ditch.  Madison fell out and was pinned under the right front tire where she died of compression asphyxia.  When emergency personnel reached Madison,

she was unresponsive and without vital signs.  Madison was pronounced dead at the scene.

On April 3, 2003, Hamby initiated the current lawsuit.  In her complaint, Hamby claims the incident at issue occurred because the Caravan was defective.  Specifically, Hamby alleges the incident occurred because the 1991 Dodge Caravan was not equipped with a brake-shift interlock system.  A brake-shift interlock is a device that prevents a vehicle from being shifted out of park and into gear unless the brake pedal is pressed. According to Hamby, if the Caravan had been equipped with a brake-shift interlock, then Madison would not have been able to move the gear shift lever out of park, causing the vehicle to roll down the hill.  Accordingly, Hamby brought claims against DaimlerChrysler for failure to warn, failure to recall or retrofit, strict product liability, and negligent design defect. In her prayer for relief, Hamby requests, among other things, damages for Madison's pain and suffering and punitive damages.

**2.  Analysis**

**(a)  The summary judgment standard**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment when all "pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating that no dispute exists as to any material fact.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970).  This burden is discharged by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support [an essential element of] the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).  In determining whether the moving party has met its burden, a district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the nonmovant has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Ultimately, the court's function is not to resolve issues of material fact, but rather to determine whether there are any

such issues to be tried. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251, 106 S. Ct. 2505, 2511 (1986). Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. <u>Id.</u> at 248, 106 S. Ct. at 2510. Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> DaimlerChrysler has moved for partial summary judgment as to three of the four claims brought by Hamby and as to the claim for damages for Madison's pain and suffering and the claim for punitive damages.

**(b)   Count III of the Complaint: Strict Liability**

DaimlerChrysler argues Count III of Hamby's complaint, which states a claim based on strict product liability, is barred by Georgia's statute of repose because Hamby brought this claim more than ten years after the first sale for use or consumption of the Caravan. Georgia's product liability statute incorporates a statute of repose, which states in relevant part, "No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." O.C.G.A. § 51-1-11(b)(2).

"[S]trict liability actions filed more than ten years after the 'date of the first sale for use or consumption of' the product are completely barred" by the statute of repose.  <u>Chrysler Corp. v. Batten</u>, 264 Ga. 723, 726, 450 S.E.2d 208, 212 (1994); <u>see also</u> <u>Allison v. McGhan Medical Corp.</u>, 184 F.3d 1300, 1306-07 (11th Cir. 1999).

It is uncontested Hamby bought the Caravan in 2002, but the vehicle was a 1991 model.  Thus, the death of Madison, which occurred in 2002, and the commencement of this suit, which occurred in 2003, both took place well over ten years from the first sale of the Caravan.  Furthermore, Hamby acknowledges in her response brief that the statute of repose bars her strict liability design defect claim.  Accordingly, the court GRANTS DaimlerChrysler's motion for summary judgment as to Hamby's claim for strict product liability.

**(c)  Count IV of the Complaint: Negligent Design Defect**

DaimlerChrysler next argues that the statute of repose also bars Hamby's claim sounding in negligence.  The statute of repose plainly applies to product liability claims sounding in negligence, but the statute contains an exception to the ten-year limitation:

13

The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property.

O.C.G.A. § 51-1-11(c).

Hamby argues she has produced evidence sufficient to create a triable issue of fact regarding whether the conduct of DaimlerChrysler, i.e., its failure to install a brake-shift interlock in the Caravan, manifests a willful, reckless, or wanton disregard for life or property. DaimlerChrysler, however, argues Hamby cannot adduce any evidence demonstrating such willfulness, recklessness, or wantonness. The Georgia courts have specified what constitutes willful and wanton conduct: "Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences . . . [so as to be the] equivalent in spirit to actual intent." Hendon v. DeKalb County, 203 Ga. App. 750, 758, 417 S.E.2d 705, 712 (1992); see also Batten, 264 Ga. at 726, 450 S.E.2d at 212.

14

In this case, the plaintiff does not allege that DaimlerChrysler acted with the actual intention of doing harm.  Accordingly, the issue is whether DaimlerChrysler's conduct rises to the level of wantonness as defined by the Georgia courts.

In arguing the exception to the ten-year statute of repose applies to her claim, Hamby relies primarily upon Watkins v. Ford Motor Co., 190 F.3d 1213 (11th Cir. 1999).  In that case, one of the plaintiffs was driving a pre-owned 1986 Ford Bronco II to a restaurant after a high school football game when the right side tires traveled a short distance off the road.  The driver attempted to bring the Bronco back onto the road, but he lost control of the vehicle.  The driver attempted to regain control of the Bronco by steering the vehicle back to the right. At that point, the Bronco flipped and rolled over two and one half times.  The driver and passengers in the car sued the maker of the Bronco, alleging that handling and stability defects caused the Bronco to rollover and that the defendant had failed to warn the plaintiffs of the known rollover hazards.  The district court granted the defendant's motion for summary judgment, holding that the plaintiffs' negligence claims were barred by Georgia's statute of repose.  The plaintiffs appealed and argued their negligent design claim fell within the

15

exception to the statute of repose discussed above.  Id. at 1215-16.

In overturning the district court, the Eleventh Circuit stated, "In this case, the [plaintiffs] presented an array of evidence addressing [the defendant's] knowledge of stability problems with the Bronco II and its decision to forgo recommended safety alterations in the design because it would either delay production or profits would be sacrificed." Id. at 1216.  The court noted the plaintiffs presented evidence that the defendant was aware of severe rollover and stability problems with its Jeep CJ, a vehicle the Bronco was closely patterned after.  The plaintiffs also presented evidence that the defendant's engineers, in responding to the problems with the Jeep CJ, submitted five proposals intended to increase the stability of the Bronco.  The management of the defendant chose the least expensive of the five proposals, rendering the Bronco less stable than the Jeep CJ.  Furthermore, the plaintiffs' design expert stated that, if the defendant had chosen a certain one of the other proposals, at a cost of only $83.00 per vehicle, then the Bronco would have been a stable vehicle.  Id. at 1217.  After discussing this evidence, the Eleventh Circuit stated, "By selecting the least expensive measure, proposal #2,

[the defendant] made profit a priority over the safety of the consumers.  Such evidence has supported findings of a reckless disregard for property or life." Id. (citations omitted).

In this case, Hamby has offered the following 11 categories of evidence she claims support a finding that DaimlerChrysler's conduct was sufficiently wanton and reckless so as to allow her claim under the exception to the statute of repose:

1.  Patents.  According to Hamby, DaimlerChrysler has known about the dangers of children shifting vehicles out of park for decades.  In support of this argument, Hamby has offered into evidence patents for brake-shift interlock devices from the 1950s, 1960s, and 1970s, all of which note that, in the past, children have accidentally shifted gear selector levers of cars from the park position into neutral or drive.

2.  1957 Automotive Safety Policy.  Hamby has also submitted an internal document produced by DaimlerChrysler entitled, "The Policy of the Chrysler Corporation Regarding Automotive Safety," which Hamby claims demonstrates DaimlerChrysler's knowledge of the dangers of children interfering with the operating controls of vehicles.  In that document, DaimlerChrysler's engineers state, "We are concerned with such things as the location of transmission controls.  Our new push button controls have been

17

located to the left of the steering wheel in order to ensure freedom from interference by other occupants of the car, particularly children." Ex. 17 to Pl.'s Response [Doc. No. 79].

3. Pre-1985 deaths. Hamby has submitted a July 10, 1985, letter from DaimlerChrysler to the U.S. General Accounting Office, which highlights DaimlerChrysler's knowledge of eight deaths occurring before 1985 involving children shifting Chrysler vehicles out of park. According to Hamby, six of these eight deaths involved children shifting a vehicle out of park while the keys were in the ignition.

4. Japanese Vehicles. According to Hamby, in 1989, the Japanese Automobile Manufacturers Association mandated that brake-shift interlocks be included on all Japanese vehicles by the 1990 model year. As of 1990-91, all Japanese minivans were manufactured with brake-shift interlocks. Hamby claims DaimlerChrysler was aware of this fact.

5. 1988 Brake-Shift Interlock Development. Hamby alleges that, in 1988, DaimlerChrysler developed a brake-shift interlock system for implementation across all of its vehicle lines. According to Hamby, DaimlerChrysler conducted brainstorming sessions, authorized the design and development of an interlock program, conducted meetings with outside vendors to design

18

prototypes for engineering evaluation, conducted supplier kickoff meetings, received three prototype designs and mockups, reviewed supplier designs with functional mockups, and conducted executive engineer level review of the brake-shift interlock systems. According to internal DaimlerChrysler documents submitted by Hamby, this program was "not a discretionary development program." It was deemed necessary to "protect the corporation," respond to the concerns of the National Highway Transportation Safety Administration ("NHTSA"), and for "product liability." Ex. 21 to Pl.'s Response [Doc. No. 79]. The cost per brake interlock was between $4.00 and $8.00. Id.

6. DaimlerChrysler's Statements to the NHTSA. In 1988, when the NHTSA inquired as to what DaimlerChrysler was doing with respect to the development of a brake-shift interlock system, DaimlerChrysler stated it was developing it. According to Hamby, in subsequent meetings in 1989-90, DaimlerChrysler monitored whether the NHTSA would mandate brake-shift interlocks. In early 1990, DaimlerChrysler determined the odds of the NHTSA mandating brake-shift interlock systems were only 25%. Hamby alleges the brake-shift interlock program was subsequently scrapped by DaimlerChrysler for no stated reason.

7. Other Manufacturers. Hamby further alleges that, after the NHTSA's 1988 inquiry of all U.S. automobile manufacturers regarding brake-shift interlocks, DaimlerChrysler was aware that all of the other U.S. manufacturers, including Ford and General Motors, were developing brake-shift interlocks for their vehicles. According to Hamby, DaimlerChrysler knew Ford phased in brake-shift interlocks beginning with model year 1990 and General Motors began to phase in brake-shift interlocks in model year 1991. By model year 1991, 46.6% of all new vehicles sold in the U.S. included brake-shift interlocks.

8. Federal Motor Vehicle Saftey Standard ("FMVSS") 114 Amendment. In 1990, the NHTSA amended FMVSS 114 to mandate key-shift interlocks. Key-shift interlocks prohibit accidental shifting out of park once the key is removed from the ignition. One purpose of the amendment was to reduce the incidents of children shifting vehicles out of park. The final regulatory evaluation summarizes studies of children shifting the gear lever out of place and distinguishes two types of incidents: (1) children shifting while the keys are not in the vehicle and (2) children shifting while the keys are in the ignition. According to Hamby, the NHTSA mandated key-shift interlock devices to prevent children from shifting vehicles out of park after the

20

keys had been removed from the ignition.  The NHTSA noted that this amendment did not cover incidents of children shifting the gear lever when "the vehicle's engine was on."  Ex. 24 to Pl.'s Response at 01648 [Doc. No. 79].  Hamby alleges DaimlerChrysler was heavily involved in this rule making process and was therefore aware of what the amendment did and did not cover.

9.  The NHTSA Sudden Acceleration Study.  In 1991, the NHTSA released a final report on its study of sudden acceleration incidents.  In that study, the NHTSA noted brake-shift interlocks had been adopted or were being considered by a number of automakers.  The NHTSA also noted brake-shift interlocks had "no adverse consequences for safety and should also provide some ancillary benefits, such as preventing unattended small children from shifting a car out of 'Park.'" Ex. 25 to Pl.'s Response at xi [Doc. No. 79].

10.  Other Chrysler Vehicles.  For the 1990 model year, the year before the Hamby Caravan was first sold, DaimlerChrysler sold the Plymouth Colt, Dodge Colt, Eagle Summit, Plymouth Laser, and Eagle Talon vehicles with brake-shift interlocks. DaimlerChrysler, however, did not offer the same safety device for its Caravans.

11.   Paul Sheridan.   Finally, Hamby has submitted the affidavit of Paul Sheridan, a former employee of DaimlerChrysler.   In her brief, Hamby fails to point to the specific portions of the affidavit supporting her claim that DaimlerChrysler's conduct with regard to the manufacturing of the Caravan was wanton and reckless.   The court has reviewed the affidavit and finds that virtually all of the allegations made by Sheridan regarding DaimlerChrysler's conduct prior to the first sale of the Caravan are merely restatements of the evidence discussed above, i.e., (1) brake-shift interlocks prevent the inadvertent movement of the automatic transmission shift lever from the "Park" position until the brake pedal is securely engaged; (2) in 1988 the Japanese Auto Manufacturers Association recommended that all automatic transmission vehicles be equipped with brake-shift interlocks as mandatory safety equipment; (3) DaimlerChrysler purchased Japanese vehicles for sale under the Chrysler name brand, and these Japanese vehicles included brake-shift interlocks; (4) in 1988 Chrysler engineers proposed that brake-shift interlocks be installed in all DaimlerChrysler vehicles, but this proposal was rejected; and (5) in 1989 DaimlerChrysler personnel acknowledged in correspondence with the NHTSA that brake-shift interlocks were

22

under active consideration by DaimlerChrysler.  Other than these allegations, all of Sheridan's testimony relates to the conduct of DaimlerChrysler after 1991, the year in which the Caravan was sold.  The conduct of DaimlerChrysler after the production of the Caravan, however, is irrelevant to Hamby's claim for negligent design defect.  The only relevant conduct is that which preceded the manufacturing and sale of the Caravan.

Of course, DaimlerChrysler contests Hamby's presentation and interpretation of this evidence, but, for the purposes of summary judgment, the court must view all issues of fact in favor of the nonmovant.  Even so, the court holds that the evidence presented by Hamby fails to establish the requisite willfulness or recklessness so as to exempt her negligence claim from the statute of repose.  The crux of the holding in <u>Watkins</u> rested on the Eleventh Circuit's determination that the plaintiffs had presented evidence that (1) the defendant knew about the stability problems with the Bronco and (2) the defendant decided to forgo safety recommendations either because they would delay production or profits would be sacrificed.  In the instant case, though Hamby has presented a wide variety of evidence supporting her claim DaimlerChrysler knew brake-shift interlocks could prevent the inadvertent shifting of the shift

23

lever, none of the evidence presented demonstrates DaimlerChrysler decided to forgo safety recommendations for improper reasons such as increasing profits or expediting production. As DaimlerChrysler points out, it complied with the amended FMVSS 114 and installed an ignition-key lock system in the Caravan to prevent the shifting of the gear shift lever once the key was removed. Thus, DaimlerChrysler had taken precautions to prevent the type of incident that is at issue in this case.

Hamby essentially argues that a jury could infer from the evidence of negligence she has presented that DaimlerChrysler acted with sufficient recklessness to trigger the exception to the statute of repose. "The ten-year statute of repose was enacted in order to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting." Batten, 264 Ga. 723, 725, 450 S.E.2d 208, 212 (1994). Thus, the purpose of the statute of repose is to bar ten-year old negligence claims unless there is clear evidence of "conduct which manifests a willful, reckless, or wanton disregard for life or property." O.C.G.A. § 51-1-11(c). If the court allowed claims such as Hamby's to escape the statute of repose, then virtually all

negligence claims would be subject to the exception, thereby undermining the very purpose of the statute. Accordingly, though the evidence presented by Hamby gives rise to a disputed material fact with regard to her claim for negligence, the evidence is legally insufficient to support the claim DaimlerChrysler acted wantonly or recklessly in failing to install a gear-shift interlock on the Caravan. For this reason, Hamby's claim for negligent design and manufacture is barred by Georgia's statute of repose, and the court GRANTS DaimlerChrysler's motion for summary judgment as to Hamby's negligent design claim.

**(d) Pain and Suffering and Punitive Damages**

DaimlerChrysler next argues Hamby cannot recover damages for pain and suffering or punitive damages because there is no evidence of pre-death pain and suffering. As to the claim for pain and suffering, DaimlerChrysler argues Hamby has produced no evidence that Madison experienced any conscious pain and suffering prior to her death. But the court finds there is evidence that Madison's death was not instantaneous and there may have been conscious pain and suffering prior to her death. For example, it is undisputed the van rolled 120 feet down the driveway with Madison inside, Madison was thrown from the

Caravan, and she died from compression asphyxia while pinned under the vehicle's right front tire. According to Hamby's expert witness, Madison was conscious for at least 15 to 20 seconds before becoming unconscious. Ex. 6 to Pl.'s Response at ¶ 4 [Doc. No. 79]. Furthermore, photographs taken of the scene of the accident depict Madison's arm raised in the air next to the tire. Ex. 5 to Pl.'s Response [Doc. No. 79]. Thus, Hamby has presented evidence from which a jury could "extrapolate the probable mental state of [Madison] in that last moment of consciousness." Monk v. Dial, 212 Ga. App. 362, 441 S.E.2d 857, 859 (1994).

As to the claim for punitive damages, under Georgia law, punitive damages are not available in a wrongful death claim, but the estate may recover punitive damages in connection with the injuries, pain, and suffering of the deceased. Ford Motor Co. v. Stubblefield, 171 Ga. App. 331, 340, 319 S.E.2d 470, 480 (1984). DaimlerChrysler argues that Hamby, on behalf of Madison's estate, cannot recover such damages because she cannot produce any evidence of any pecuniary loss due to Madison's injuries, nor can she adduce evidence of the conscious pain and suffering of Madison. The court held above, however, that Hamby has presented sufficient evidence as to Madison's pain and

suffering to create a triable issue of material fact. Accordingly, the court holds DaimlerChrysler has failed to demonstrate that Hamby cannot recover punitive damages in this case.[1]   For all of these reasons, the court DENIES DaimlerChrysler's motion for summary judgment as to Hamby's claim for pain and suffering and punitive damages.

**(e) Claim for Failure to Recall or Retrofit**

DaimlerChrysler next argues summary judgment should be granted as to count II of Hamby's complaint, which purports to state a claim based on failure to recall or retrofit, on the grounds that there is no state or federal cause of action that allows a plaintiff to assert this claim.   Hamby agrees there is no federal cause of action, but she argues such a claim is

---

[1] The court notes this holding does not conflict with the court's previous holding that the plaintiff has failed to demonstrate DaimlerChrysler's conduct was wanton and reckless with regard to her negligent manufacturing claim so as to trigger the exception to the statute of repose.   In considering her negligent manufacturing claim, the court considered only the evidence relevant to that claim, i.e., DaimlerChrysler's pre-1991 conduct.   With regard to the failure to warn claim, DaimlerChrysler's post-1991 conduct is relevant, and the court has not made any ruling as to that conduct.   DaimlerChrysler moved for summary judgment as to Hamby's claim for punitive damages on the limited ground that Hamby cannot demonstrate Madison suffered pain and suffering prior to her death, and the court rejected that argument as set forth above.   The court's holding is limited accordingly.

27

recognized under Georgia law.  In making her argument, Hamby relies heavily upon <u>Mack Trucks, Inc. v. Conkle</u>, 263 Ga. 539, 545, 436 S.E.2d 635, 640 (1993).  In <u>Conkle</u>, the plaintiff was injured after the tractor trailer truck he was driving overturned when its right frame rail broke.  The plaintiff sued the defendant manufacturer of the truck, alleging the frame rail broke because of a fatigue crack.  The plaintiff sued on theories of strict liability and negligence.  <u>Id.</u> at 539, 436 S.E.2d at 636.  At the end of the trial, the jury returned a special verdict, finding that the defendant was liable for "'negligent failure to recall or warn'" but not liable for "'strict products liability.'"  <u>Id.</u>  The jury returned a verdict for both compensatory damages and punitive damages.  <u>Id.</u>, 436 S.E.2d at 636-37.

The defendant manufacturer appealed the award of punitive damages on the grounds the award could not be sustained under O.C.G.A. § 51-12-5.1(e)(1) because that subsection applies to lawsuits arising from product liability, but the special verdict held the defendant manufacturer was not liable for strict product liability.  Thus, according to the defendant, the court erred in not applying O.C.G.A. § 51-12-5.1(g), which would have

capped the punitive award to $250,000.  Id. at 540, 436 S.E.2d at 637.

In rejecting the defendant's argument, the court noted that, though O.C.G.A. § 51-1-11(b) creates a strict liability claim for product liability, O.C.G.A. § 51.1-11(c) recognizes a negligence theory of product liability.  Id.  Thus, the court held:

> [T]he jury's verdict in this case, that [the defendant] is liable on the basis of its 'negligent failure to recall or warn,' was based on a negligence theory of product liability which is recognized under O.C.G.A. § 51.1-11(c).  As such, the trial court correctly concluded that this was a product liability action sounding in negligence, and did not err in refusing to apply O.C.G.A. § 51-12-5.1(g) to the award of punitive damages.

Id. at 540-41, 436 S.E.2d at 637.

In the case currently before the court, the plaintiff argues this holding clearly demonstrates that Georgia recognizes an independent cause of action for negligent failure to recall. The court disagrees.  First, the court notes that, even assuming there was an independent cause of action for negligent failure to recall, that claim would be barred by the statute of repose in this case because that statute bars negligent product liability claims, other than failure to warn claims, brought

29

over ten years after the first sale for use or consumption of the personal property.

In reviewing <u>Mack</u>, however, the court further concludes the Georgia Supreme Court did not recognize an independent claim for failure to recall.  The only other case Hamby cites in support of her argument is <u>Volkswagen of America, Inc. v. Gentry</u>, 254 Ga. App. 888, 564 S.E.2d 733 (2002), but the court in that case never discussed the propriety of a claim for negligent failure to recall.  Instead, in the portion of the opinion cited by Hamby, the Georgia Court of Appeals merely held that the trial court's charge to the jury relating to the plaintiffs' claim that the defendant had violated, among other things, the recall provisions of the Federal Safety Act was not improper.  <u>Id.</u> at 893, 564 S.E.2d at 739-40.  The court concludes that <u>Volkswagen</u> does not support Hamby's claim that there is an independent cause of action for failure to recall.  For this reason, the court will focus its analysis on <u>Mack</u>.

The holding in <u>Mack</u> relevant to the current case was that the jury's verdict was based on a negligence theory of product liability, which is recognized under O.C.G.A. § 51-1-11(c), and, therefore, the trial court correctly refused to apply § 51-12-5.1(g) to limit the award of punitive damages.  The Georgia

Supreme Court did not hold that there is an independent cause of action for failure to recall.  In fact, the court went to some lengths to place the phrase "negligent failure to recall or warn" in scare quotes twice when discussing the jury's special verdict, thereby indicating that negligent failure to recall is not a proper claim.  The court concludes that the Georgia Supreme Court treated the failure to recall "claim" as being subsumed within the failure to warn claim, which is a proper claim.  Accordingly, the court will do the same in this case. To the extent Hamby seeks to assert an independent cause of action for failure to recall, the court GRANTS DaimlerChrysler's motion for summary judgment.  The court, however, will treat Hamby's purported failure to recall claim as being subsumed by her failure to warn claim, and, therefore, Hamby may present evidence relevant to DaimlerChrysler's failure to recall the Caravan in support of her failure to warn claim.

31

III.    **Conclusion**

For the foregoing reasons the court:

(1)  DENIES the plaintiff's motion for a Rule 16(a) status
     conference [Doc. No. 59] (the parties are directed to
     jointly file a brief within ten days of the entry of
     this order, not to be longer than ten pages, informing
     the court of the status of discovery in this case,
     particularly whether the parties need an extension of
     the discovery period);

(2)  GRANTS the plaintiff's motion to compel discovery
     responses [Doc. No. 66];

(3)  DENIES the plaintiff's motion for oral argument on the
     defendant's motion for partial summary judgment [Doc.
     No. 86];

(4)  DENIES the plaintiff's motion for oral argument on the
     motion to compel [Doc. No. 90];

(5)  GRANTS IN PART AND DENIES IN PART, as set forth above,
     the defendant's motion for partial summary judgment
     [Doc. No. 67];

(6)  GRANTS the defendant's motion to supplement motion for
     partial summary judgment [Doc. No. 72];

(7)  GRANTS  the  defendant's  motion  for  leave  to  file
     affidavit  in  response  to  the  plaintiff's  motion  to
     compel [Doc. No. 84]; and

(8)  DIRECTS the parties to file a proposed consolidated
     pre-trial order pursuant to Local Rule 16.4 within 30
     days of entry of this order.


SO ORDERED, this 5<u>th</u> day of December, 2005.


                         <u>/s/ Charles A. Pannell, Jr.</u>
                         CHARLES A. PANNELL, JR.
                         United States District Judge